## FEDERAL TRADE COMMISSION *v.* BROWN SHOE CO., INC.

No. 118.   Argued April 25, 1966.—Decided June 6, 1966.

*Ralph S. Spritzer* argued the cause for petitioner.   On the brief were *Solicitor General Marshall, Assistant Attorney General Turner, Robert S. Rifkind, Howard E.*

*Shapiro, Milton J. Grossman, James McI. Henderson, Thomas F. Howder* and *Gerald J. Thain.*

*Robert H. McRoberts* argued the cause for respondent. With him on the brief were *Gaylord C. Burke* and *Edwin S. Taylor.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Section 5 (a)(6) of the Federal Trade Commission Act empowers and directs the Commission "to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."[1]  Proceeding under the authority of § 5, the Federal Trade Commission filed a complaint against the Brown Shoe Co., Inc., one of the world's largest manufacturers of shoes with total sales of $236,946,078 for the year ending October 31, 1957.  The unfair practices charged against Brown revolve around the "Brown Franchise Stores' Program" through which Brown sells its shoes to some 650 retail stores.  The complaint alleged that under this plan Brown, a corporation engaged in interstate commerce, had "entered into contracts or franchises with a substantial number of its independent retail shoe store operator customers which require said customers to restrict their purchases of shoes for resale to the Brown lines and which prohibit them from purchasing, stocking or reselling shoes manufactured by competitors of Brown."  Brown's customers who entered into these restrictive franchise agreements, so the complaint charged, were given in return special treatment and valuable benefits which were not granted to Brown's customers who

---

[1] 38 Stat. 719, as amended, 15 U. S. C. § 45 (a)(6) (1964 ed.).

Section 5 (a)(1) of the Federal Trade Commission Act provides that "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."

did not enter into the agreements. In its answer to the Commission's complaint Brown admitted that approximately 259 of its retail customers had executed written franchise agreements and that over 400 others had entered into its franchise program without execution of the franchise agreement. Also in its answer Brown attached as an exhibit an unexecuted copy of the "Franchise Agreement" which, when executed by Brown's representative and a retail shoe dealer, obligates Brown to give to the dealer but not to other customers certain valuable services, including among others architectural plans, costly merchandising records, services of a Brown field representative, and a right to participate in group insurance at lower rates than the dealer could obtain individually. In return, according to the franchise agreement set out in Brown's answer, the retailer must make this promise:

"In return I will:

"1. Concentrate my business within the grades and price lines of shoes representing Brown Shoe Company Franchises of the Brown Division and will have no lines conflicting with Brown Division Brands of the Brown Shoe Company."

Brown's answer further admitted that the operators of "such Brown Franchise Stores in individually varying degrees accept the benefits and perform the obligations contained in such franchise agreements or implicit in such Program," and that Brown refuses to grant these benefits "to dealers who are dropped or voluntarily withdraw from the Brown Franchise Program . . . ." The foregoing admissions of Brown as to the existence and operation of the franchise program were buttressed by many separate detailed fact findings of a trial examiner, one of which findings was that the franchise program

effectively foreclosed Brown's competitors from selling to a substantial number of retail shoe dealers.[2] Based on these findings and on Brown's admissions the Commission concluded that the restrictive contract program was an unfair method of competition within the meaning of § 5 and ordered Brown to cease and desist from its use.

On review the Court of Appeals set aside the Commission's order. In doing so the court said:

"By passage of the Federal Trade Commission Act, particularly § 5 thereof, we do not believe that Congress meant to prohibit or limit sales programs such as Brown Shoe engaged in in this case. . . . The custom of giving free service to those who will buy their shoes is widespread, and we cannot agree with the Commission that it is an unfair method of competition in commerce." 339 F. 2d 45, 56.

In addition the Court of Appeals held that there was a "complete failure to prove an exclusive dealing agreement which might be held violative of § 5 of the Act." We are asked to treat this general conclusion as though the court intended it to be a rejection of the Commission's findings of fact. We cannot do this. Neither this statement of the court nor any other statement in the

---

[2] In its opinion the Commission found that the services provided by Brown in its franchise program were the "prime motivation" for dealers to join and remain in the program; that the program resulted in franchised stores purchasing 75% of their total shoe requirements from Brown—the remainder being for the most part shoes which were not "conflicting" lines, as provided by the agreement; that the effect of the plan was to foreclose retail outlets to Brown's competitors, particularly small manufacturers; and that enforcement of the plan was effected by teams of field men who called upon the shoe stores, urged the elimination of other manufacturers' conflicting lines and reported deviations to Brown who then cancelled under a provision of the agreement. Compare *Brown Shoe Co.* v. *United States,* 370 U. S. 294.

opinion indicates a purpose to hold that the evidence failed to show an agreement between Brown and more than 650 franchised dealers which restrained the dealers from buying competing lines of shoes from Brown's competitors. Indeed, in view of the crucial admissions in Brown's formal answer to the complaint we cannot attribute to the Court of Appeals a purpose to set aside the Commission's findings that these restrictive agreements existed and that Brown and most of the franchised dealers in varying degrees lived up to their obligations. Thus the question we have for decision is whether the Federal Trade Commission can declare it to be an unfair practice for Brown, the second largest manufacturer of shoes in the Nation, to pay a valuable consideration to hundreds of retail shoe purchasers in order to secure a contractual promise from them that they will deal primarily with Brown and will not purchase conflicting lines of shoes from Brown's competitors. We hold that the Commission has power to find, on the record here, such an anticompetitive practice unfair, subject of course to judicial review. See *Atlantic Rfg. Co.* v. *FTC,* 381 U. S. 357, 367.

In holding that the Federal Trade Commission lacked the power to declare Brown's program to be unfair the Court of Appeals was much influenced by and quoted at length from this Court's opinion in *Federal Trade Comm'n* v. *Gratz,* 253 U. S. 421. That case, decided shortly after the Federal Trade Commission Act was passed, construed the Act over a strong dissent by Mr. Justice Brandeis as giving the Commission very little power to declare any trade practice unfair. Later cases of this Court, however, have rejected the *Gratz* view and it is now recognized in line with the dissent of Mr. Justice Brandeis in *Gratz* that the Commission has

broad powers to declare trade practices unfair.[3]  This
broad power of the Commission is particularly well estab-
lished with regard to trade practices which conflict
with the basic policies of the Sherman and Clayton
Acts even though such practices may not actually vio-
late these laws.[4]  The record in this case shows beyond
doubt that Brown, the country's second largest man-
ufacturer of shoes, has a program, which requires shoe
retailers, unless faithless to their contractual obliga-
tions with Brown, substantially to limit their trade with
Brown's competitors.  This program obviously conflicts
with the central policy of both § 1 of the Sherman
Act and § 3 of the Clayton Act against contracts which
take away freedom of purchasers to buy in an open
market.[5]  Brown nevertheless contends that the Com-
mission had no power to declare the franchise program
unfair without proof that its effect "may be to substan-
tially lessen competition or tend to create a monopoly"

---

[3] See, e. g., Federal Trade Comm'n v. R. F. 'Keppel & Bro., Inc.,
291 U. S. 304, 310; Trade Comm'n v. Cement Institute, 333 U. S.
683, 693; Atlantic Rfg. Co. v. FTC, 381 U. S. 357, 367.

[4] See, e. g., Fashion Guild v. Trade Comm'n, 312 U. S. 457, 463;
Atlantic Rfg. Co. v. FTC, 381 U. S. 357, 369.

[5] Section 1 of the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 (1964
ed.), declares illegal "Every contract, combination in the form of
trust or otherwise, or conspiracy, in restraint of trade or commerce
among the several States, or with foreign nations . . . ."

Section 3 of the Clayton Act, 38 Stat. 731, 15 U. S. C. § 14 (1964
ed.), provides in relevant part:

"It shall be unlawful for any person engaged in commerce . . .
to . . . make a . . . contract for sale of goods . . . for . . . resale
within the United States . . . on the condition, agreement, or under-
standing that the . . . purchaser thereof shall not use or deal in
the goods . . . of a competitor or competitors of the . . . seller,
where the effect of such . . . condition, agreement, or understanding
may be to substantially lessen competition or tend to create a monop-
oly in any line of commerce."

which of course would have to be proved if the Government were proceeding against Brown under § 3 of the Clayton Act rather than § 5 of the Federal Trade Commission Act. We reject the argument that proof of this § 3 element must be made for as we pointed out above our cases [6] hold that the Commission has power under § 5 to arrest trade restraints in their incipiency without proof that they amount to an outright violation of § 3 of the Clayton Act or other provisions of the antitrust laws. This power of the Commission was emphatically stated in *F. T. C.* v. *Motion Picture Adv. Co.,* 344 U. S. 392, at pp. 394–395:

> "It is . . . clear that the Federal Trade Commission Act was designed to supplement and bolster the Sherman Act and the Clayton Act . . . to stop in their incipiency acts and practices which, when full blown, would violate those Acts . . . as well as to condemn as 'unfair methods of competition' existing violations of them."

We hold that the Commission acted well within its authority in declaring the Brown franchise program unfair whether it was completely full blown or not.

*Reversed.*

---

[6] See cases cited in note 4, *supra.*