[No. 9283–9–I.   Division One.   January 10, 1983.]

THE STATE OF WASHINGTON, *Appellant,* v. STATE CREDIT
ASSOCIATION, INC., ET AL, *Respondents.*

Kenneth O. Eikenberry, Attorney General, and Greg Montgomery, John R. Ellis, and Jon Ferguson, Assistants, for appellant.

David J. Balint and Nicholas Corning, for respondents.

RINGOLD, J.—The State commenced this action on July 31, 1978, against State Credit Association, Inc. (State Credit), a licensed collection agency, and several of its officers and employees, including Michael R. Boespflug, a debt collector, a/k/a Mike Bass. The complaint alleged violations of the Washington Collection Agency Act (CAA), RCW 19.16, the Washington Consumer Protection Act (Act), RCW 19.86, and a King County injunction entered in 1974 in Walker v. State Credit Association, Inc. against defendants enjoining violations of the two aforementioned statutes. Boespflug counterclaimed against the State for malicious prosecution and abuse of process, and cross-claimed against other defendants for indemnification. The

State appeals the judgment dismissing Boespflug and awarding him $15,717.95 in attorney's fees and costs.

On August 4, 1978, a jury demand was filed on behalf of all defendants and on April 22, 1980, the State moved to strike the demand. The court denied the State's motion, and the trial commenced on May 27, 1980. In the form of answers to interrogatories, the jury returned a verdict for Boespflug but against State Credit, its officers, and other employees named in the suit. The court on Boespflug's motion then dismissed his counterclaim for malicious prosecution and abuse of process.

The court on August 8, 1980, entered two judgments, one for Boespflug on the jury's exculpatory verdict, dismissing him and ordering the State to pay his attorney's fees and costs, and another against the remaining defendants based on the court's findings of fact and conclusions of law.

### RIGHT TO JURY TRIAL IN CONSUMER PROTECTION ACTIONS

The State contends that actions brought by the Attorney General to enforce the Consumer Protection Act are entirely equitable, affording the defendant no right to a jury trial. Boespflug responds that his counterclaim for malicious prosecution and his cross claim for indemnification render this action one of mixed law and equity, and therefore triable to a jury. He also contends that the State waived its right to object by waiting nearly 2 years before challenging the order granting the jury demand and by failing to seek discretionary review of the order. He further argues that, in any event, the court considered the jury verdict as advisory only.

We first address whether the court considered the jury verdict as binding or merely as advisory. The civil rule authorizing the use of advisory juries provides:

(c) **Advisory Jury and Trial by Consent.** In all actions not triable of right by a jury the court, upon motion or of its own initiative, may try an issue with an advisory jury or it may, with the consent of both parties, order a trial with a jury whose verdict has the same effect

as if trial by jury had been a matter of right. CR 39(c).

■ Absent consent by both parties, a jury verdict in an equity case is advisory only. *State ex rel. Dep't of Ecology v. Anderson,* 94 Wn.2d 727, 731, 620 P.2d 76 (1980); *Alpine Indus., Inc. v. Gohl,* 30 Wn. App. 750, 760, 637 P.2d 998, 645 P.2d 737 (1981). An equity court that impanels a jury must clearly indicate that it regards the verdict as advisory, preserving to itself the function of weighing the evidence and judging the credibility of witnesses. *See Anderson,* at 732; *Gohl,* at 761. To further demonstrate the advisory nature of the verdict, the trial court must enter findings of fact and conclusions of law. CR 52(a)(1). Failure to do so is reversible error. *State v. Wood,* 68 Wn.2d 303, 304, 412 P.2d 779 (1966); *State v. Helsel,* 61 Wn.2d 81, 82, 377 P.2d 408 (1962).

The trial court considered the jury's verdict as to Boespflug, given in the form of answers to interrogatories, to have been binding and not merely advisory. First, the court failed to indicate that it was impaneling the jury for advisory purposes. Second, the court failed to enter findings of fact and conclusions of law on the State's claim against Boespflug as required by CR 52(a) in actions tried with an advisory jury. The court entered findings and conclusions on the claims against the other defendants, but entered judgment directly on the verdict as to Boespflug. Having determined that the jury was not advisory, we turn to the question of whether the court was correct in affording Boespflug a jury trial.

■ The Washington State Constitution, article 1, section 21, provides that the right to a jury trial shall remain inviolate. Absent a statute granting jury trial, Washington courts take a historical approach in analyzing this guaranty, preserving the right in actions whose common law counterparts were triable to a jury when the constitution was adopted. *State ex rel. Dep't of Ecology v. Anderson,* 94 Wn.2d 727, 620 P.2d 76 (1980); *In re Ellern,* 23 Wn.2d 219,

160 P.2d 639 (1945). Conversely, no jury trial right exists in actions regarded as equitable in nature and therefore triable to the court at common law. *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 617 P.2d 704 (1980); *Dexter Horton Bldg. Co. v. King Cy.,* 10 Wn.2d 186, 116 P.2d 507 (1941). Nor does the right to a jury trial exist in statutorily created actions without common law analogues. *State Bd. of Med. Examiners v. Macy,* 92 Wash. 614, 159 P. 801 (1916); 2 L. Orland, Wash. Prac. § 191 (3d ed. 1972).

The Act creates a cause of action entirely unknown to the common law. The concept of "unfair or deceptive acts or practices" proscribed by RCW 19.86.020 has no parallel in the law as it existed at the time our constitution was adopted. *Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 640, 538 P.2d 510 (1975). Nor does the term "unfair methods of competition" have an exact common law equivalent. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 743, 504 P.2d 1139 (1973).

The relief available in a consumer protection action brought by the State is entirely equitable. The injunction is a quintessentially equitable remedy. *Tradewell Stores, Inc. v. T.B. & M., Inc.,* 7 Wn. App. 424, 427–28, 500 P.2d 1290 (1972). Restitution is regarded as incidental to injunctive relief, *Seaboard,* at 744; *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 82 Wn.2d 265, 277, 510 P.2d 233, 59 A.L.R.3d 1209 (1973), and civil penalties are available once the court's equity jurisdiction is otherwise invoked. F. James & G. Hazard, *Civil Procedure* § 8.7, at 371 (2d ed. 1977); *Ralph Williams,* at 277.

Acknowledging their equitable nature, our Supreme Court recently held that consumer protection actions brought by the Attorney General afford the defendant no right to a jury trial. In *State ex rel. Dep't of Ecology v. Anderson,* 94 Wn.2d 727, 620 P.2d 76 (1980), as in this case, the State sought an injunction, restitution, civil penalties, and attorney's fees. The Supreme Court held that the trial court erred in granting the defendant's demand for

a jury trial, explaining: "Where a governmental body seeks to enjoin the commission of acts made illegal by statute, it is the court's equity jurisdiction that is invoked." *Anderson,* at 730.

The court in *Anderson* also reviewed the policies underlying the rule that equitable actions must be tried to a court and not to a jury.

> In equitable actions, if relief is to be effective it often must be speedy, and calling a jury almost inevitably involves delay. While a jury is capable of ascertaining the facts upon which an equitable decree can be based, the function of balancing equities can be performed only by a learned judge. Where extraordinary and onerous remedies are to be employed, it is essential that the judge's knowledge and understanding of equitable principles should be utilized in evaluating the evidence as well as deciding upon the relief to be granted.

*Anderson,* at 732.

Boespflug attempts to distinguish the present case from *Anderson,* noting that the State in *Anderson* immediately sought discretionary appellate review of the trial court's denial of its motion to strike the jury demand while the State here proceeded to trial. The State made a timely motion to strike the jury demand, thereby preserving the error. Furthermore, RAP 2.2 discourages discretionary review of nonfinal orders because the remedy by appeal is generally adequate, and the court wishes to avoid "piecemeal review." *Scavenius v. Manchester Port Dist.,* 2 Wn. App. 126, 127, 467 P.2d 372 (1970). It was unnecessary for the State to seek discretionary review of the jury trial ruling to preserve the claimed error.

This cause of action differs from *Anderson* because it concerns more than equitable consumer protection claims. At the time the court granted defendants' jury demand, Boespflug had outstanding legal claims against the State and his codefendants, rendering this cause of action one of mixed law and equity. In such cases trial courts are accorded wide discretion in determining whether the case is primarily equitable or legal, thus meriting a bench or a jury

trial. *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 617 P.2d 704 (1980). This judicial discretion should be exercised with reference to the following factors:

(1) who seeks the equitable relief; (2) is the person seeking the equitable relief also demanding trial of the issues to the jury; (3) are the main issues primarily legal or equitable in their nature; (4) do the equitable issues present complexities in the trial which will affect the orderly determination of such issues by a jury; (5) are the equitable and legal issues easily separable; (6) in the exercise of such discretion, great weight should be given to the constitutional right of trial by jury and if the nature of the action is doubtful, a jury trial should be allowed; (7) the trial court should go beyond the pleadings to ascertain the real issues in dispute before making the determination as to whether or not a jury trial should be granted on all or part of such issues.

*Brown,* at 368.[1] A trial court's exercise of discretion with attention to the above factors must not be disturbed absent clear abuse. *Brown.* Considering the factors in *Brown,* we cannot say that the trial court abused its discretion in affording Boespflug a jury trial. *Cf. State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971) (determination of abuse of discretion requires weighing of interests affected by its exercise).

JUDGMENT NOTWITHSTANDING THE VERDICT

■ The State contends that no competent evidence was presented to support the verdict exonerating Boespflug. A motion for judgment notwithstanding the verdict should not be granted unless the court can say as a matter of law that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. *Hojem v. Kelly,* 93 Wn.2d 143, 606 P.2d 275 (1980). We have reviewed the record and, giving Boespflug the benefit of every favorable

---

[1]*Brown* dealt with a case where the plaintiff's claims were both legal and equitable. We believe the *Brown* court's reasoning also applies to a case such as the one before us, where the defendant interposes claims of a different nature from those of the plaintiff.

inference that can reasonably be drawn, *Wilcoxen v. Seattle,* 32 Wn.2d 734, 203 P.2d 658 (1949), we find sufficient, competent evidence to support the verdict. The trial court did not err in denying the State's motion for judgment notwithstanding the verdict.

### ATTORNEY'S FEES TO PREVAILING DEFENDANTS
### IN CONSUMER PROTECTION ACTIONS
### BROUGHT BY THE STATE

The final issue, one of first impression in Washington, is what standard should guide a trial court in deciding whether to award attorney's fees to a defendant who prevails against the State in a consumer protection action. The Washington Consumer Protection Act has two provisions governing awards of attorney's fees. In consumer protection actions brought by private plaintiffs under RCW 19.86–.090,[2] attorney's fees awards are mandatory. *Tradewell Stores,* at 432. In actions prosecuted by the State, fee awards are discretionary with the trial court. RCW 19.86-.080 provides in part:

> The attorney general may bring an action in the name of the state against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; *and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee.*[3]

---

[2]RCW 19.86.090 provides in part:

"Civil action for damages—Treble damages authorized—Action by governmental entities. Any person who is injured in his business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, *including a reasonable attorney's fee,* and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: *Provided,* That such increased damage award for violation of RCW 19.86.020 may not exceed one thousand dollars. For the purpose of this section 'person' shall include the counties, municipalities, and all political subdivisions of this state." (Italics ours.)

(Italics ours.)

The parties take divergent positions in their analyses of this provision. The State urges us to allow attorney's fees awards to successful defendants only where the State's case is frivolous, groundless, or unreasonable. Boespflug argues that the "clear and unambiguous" language of the Act requires trial courts to treat private defendants and the State alike in awarding fees and costs to the victor.

█ Boespflug's literal interpretation[4] of this provision is unpersuasive. Such a mechanical statutory analysis fails to take into account the inherent limitations of language: even when the Legislature formulates a coherent, internally consistent policy and attempts to translate it into law, the words it uses in the statute may not fully convey legislative intent and meaning.[5] A literal analysis also ignores human inability to foresee all possible applications of a statute. All legislation, no matter how precise and detailed its language, suffers from an inevitable incompleteness which can be rectified only by judicial interpretation in the context of specific cases.[6]

Aside from the limitations of language and vision, a literal analysis is unavailing when applied to broadly phrased enactments. Interpretation of intentionally imprecise and general statutory language does not involve simple discovery of meaning but rather attribution of meaning. The

---

[3]RCW 19.86.090 differs from RCW 19.86.080 in another aspect as well. RCW 19.86.080 authorizes awards to a prevailing *party*, either the State or the defendant. RCW 19.86.090, in contrast, allows awards to a prevailing *plaintiff*.

[4]A modern advocate of literal, or "plain meaning," analysis of language is Professor Henry Hart. Compare Hart, *Positivism and the Separation of Law and Morals*, 71 Harv. L. Rev. 593 (1958) (words have standard instances) *with* Fuller, *Positivism and Fidelity to Law—A Reply to Professor Hart*, 71 Harv. L. Rev. 630 (1958) (interpretation of words requires attribution of meaning).

[5]Comment, *Intent, Clear Statements, and the Common Law: Statutory Interpretation in the Supreme Court*, 95 Harv. L. Rev. 892, 899 (1982).

[6]95 Harv. L. Rev. at 892.

courts must make sense out of such a statute by furnishing it principles and by shaping its contours. RCW 19.86.080 falls into this category of statutes inviting judicial development. It makes the determination of whether to award attorney's fees discretionary, but leaves to the courts the development of standards to guide the exercise of that discretion.[7]

Establishing standards to inform a trial court's discretion requires an examination of all the purposes, interests and policies implicated by its exercise. *State ex rel. Carroll v. Junker, supra* at 26.

The public policy served by allowing prevailing defendants to recover litigation expenses from the State is a fundamental one. Fee awards to vindicated defendants discourage the Attorney General from abusing his considerable governmental power. *See* Comment, *Reasonable Attorneys' Fees and Treble Damages—Balancing the Scales of Consumer Justice,* 10 Gonz. L. Rev. 593, 623 (1975). They also serve to "balance the scales of consumer justice." 10 Gonz. L. Rev. at 623.

Several considerations, however, counsel against making fee awards to prevailing defendants automatic. One is the public interest in allowing the Attorney General to exercise his prosecutorial discretion in a professional manner. His decision whether to maintain an action should be based on his assessment of the merits of the case, not on political pressures or budgetary constraints.[8] Another consideration against routine fee awards to defendants is the direction in the Act that courts give it a liberal construction in order to

---

[7]Comment, *Reasonable Attorneys' Fees and Treble Damages—Balancing the Scales of Consumer Justice,* 10 Gonz. L. Rev. 593, 616 (1975) (RCW 19.86.080 must be interpreted in light of traditional equitable arguments).

[8]Attorney's fee awards against the State, if paid from the Attorney General's litigation budget, could divert resources from that office's enforcement of the Act. Faced with a limited litigation budget and the possibility of large, adverse judgments for attorney's fees, the State might respond by prosecuting only the most egregious violations.

effectuate its beneficial purposes. RCW 19.86.920; *Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 (1978). The beneficial purposes of the Act are to purge the free market of and protect consumers from unethical practices. Fee awards to the State promote this end; awards to defendants do not.

The United States Supreme Court's interpretation of a similar statutory provision is instructive. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1976), the Court addressed section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), which provides in part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . ."[9]

Rejecting the defendant's "plain meaning" analysis of the permissive language of this statute, the Court identified two considerations supporting differential treatment of prevailing plaintiffs and defendants: (1) a plaintiff is the "chosen instrument of Congress" to vindicate public policy; (2) awards to prevailing plaintiffs punish violators of federal law. *Christiansburg*, at 418. The Court found neither of these considerations present where the defendant prevails. *Christiansburg*, at 418–19. While noting the stronger case to be made for awarding fees to successful plaintiffs, the Court nonetheless pointed out that neither the language of the act nor the principles of fair play and justice support a

---

[9]This provision differs from RCW 19.86 in several respects. First, it precludes the government from recovering attorney's fees; RCW 19.86.080 authorizes such recovery. Second, it authorizes fee awards to prevailing *defendants* in private actions; RCW 19.86.090, which addresses private actions, allows awards only to plaintiffs.

The Court made no distinction between private and public plaintiffs in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1976). It rejected the arguments that a government agency with a statutory mandate needs no inducement to act, and that a government agency is better able than a private litigant to pay litigation expenses. *Christiansburg*, at 422 n.20. On the other hand, the Court recognized the plight of small businesses for whom the costs of defending even a frivolous lawsuit may be sufficiently high to discourage them from exercising their legal rights. *Christiansburg*.

construction foreclosing from the defendant the possibility of recovering expenses in defending against even a groundless action. *Christiansburg,* at 419.

Against the backdrop of these considerations, the Court fashioned a rule allowing attorney's fees to be assessed against a plaintiff only where his claim was frivolous, unreasonable, or groundless, or he continued to prosecute the claim after it clearly became so. *Christiansburg,* at 422. The Court noted that proving groundlessness requires more than simply demonstrating that the plaintiff lost his case, and cautioned that "hindsight logic could discourage all but the most airtight claims . . ." *Christiansburg,* at 422. The Court explained:

> [N]o matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg,* at 422.

We find the Court's analysis compelling, but decline to adopt the "frivolous, unreasonable or groundless" standard to guide a trial court's exercise of discretion. Such a standard places too great a burden on vindicated defendants, and fails to give sufficient weight to the public interest in restraining abuses of governmental power. Rather, we adopt the following factors to guide trial courts in exercising their discretionary power under RCW 19.86.080 to award or deny attorney's fees to successful defendants: (1) the need to curb serious abuses of governmental power; (2) the necessity of providing fair treatment to vindicated defendants; (3) the strong public interest in continued vigorous State prosecution of consumer protection violations; and (4) the necessity of avoiding hindsight logic in making the determination.

We affirm the judgment except as to the award of attorney's fees. We remand for determination of whether to

award Boespflug his attorney's fees incurred at trial and in this appeal.

DURHAM, A.C.J., and CALLOW, J., concur.

Reconsideration denied February 3, 1983.