**GOLDEN GRAIN MACARONI COMPANY, a corporation, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 71–1570.**

United States Court of Appeals, Ninth Circuit.

Dec. 20, 1972.

---

884

J. Paul Coie (argued), Douglas Beighle (argued), of Perkins, Coie, Stone, Olson & Williams, Seattle, Wash., J. Wallace Adair, of Howrey, Simon, Baker & Murchison, Washington, D. C., for petitioner.

Gerald Harwood, Atty. (argued), Frederick H. Mayer, Montgomery Hyun, Attys., Harold J. Rhynedance, Jr., Asst. Gen. Counsel, Ronald M. Dietrich, Gen. Counsel, Federal Trade Comm., Washington, D. C., William L. Dwyer, Seattle, Wash., for respondent.

Before MOORE,* BROWNING and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

Golden Grain Macaroni Company petitions for review of an order of the Federal Trade Commission directing Golden Grain to divest itself of all its interests in three other macaroni producers and requiring Golden Grain to refrain from further acquisitions in the macaroni industry for a period of ten years.

Golden Grain is the largest seller of dry-paste food products in the Pacific Northwest. In 1957, Golden Grain entered the regional market in the Seattle area by the acquisition of Mission Macaroni. This acquisition is not challenged in this litigation, but it has historical significance.

Included in the assets acquired in 1957 from Mission Marcaroni was 49 per cent of the stock of Porter-Scarpelli Macaroni Company, of Portland, Oregon. Control of Porter-Scarpelli has remained at all relevant times in the Scarpelli family.

In 1963, Golden Grain acquired control of Major Italian Foods, a Seattle macaroni manufacturer that by 1968 accounted for about 14 per cent of the sales in the Pacific Northwest market. Later, Golden Grain acquired all the stock of Oregon Macaroni Manufacturing Company. Oregon Macaroni operated a small plant accounting for about one per cent of the sales in the region. The extent of Oregon Macaroni's interstate business was not established, but appeared to be minimal.

Divestiture proceedings were instituted by a complaint charging monopolization, and attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2. After lengthy litigation, the Commission decided that, whether or not Golden Grain had monopolized or attempted to monopolize the macaroni market in the relevant region, in violation of Section 2 of the Sherman Act, Golden Grain's acquisition of substantial interests in three macaroni manufacturing companies violated the prohibition of Section 7 of the Clayton Act, 15 U.S. C. § 18, against acquisitions where the effect may be substantially to lessen competition or may tend to create a monopoly. The Commission's final order compels divestiture of all of Golden

---

* The Honorable Leonard P. Moore, Senior United States Circuit Judge, United States Court of Appeals for the Second Circuit.

Grain's interest in Major Italian Foods, Porter-Scarpelli, and Oregon Macaroni.

Golden Grain attacks this order on both due-process and substantive grounds. Golden Grain asserts that the original complaint "sounded" in Sherman Act monopoly and attempted monopoly, and gave no notice of reliance upon Section 7 of the Clayton Act. The substantive theory is that the acquisition of Major Italian Foods is exempted from antitrust liability because Major Italian was a "failing company."

The final paragraph of the FTC complaint charged as follows:

"The acts and practices of the respondents as herein alleged have had and do have the effect of hindering, lessening, restricting, restraining, destroying, and eliminating competition in the manufacture, distribution and sale of macaroni and related paste products; have had and do have a tendency to unduly hinder competition or to create and maintain in respondents a monopoly; have constituted an attempt to monopolize; have foreclosed markets and access to markets to competitors or potential competitors * * * and constitute unfair methods of competition * * * within the intent and meaning of the Federal Trade Commission Act."

Elsewhere in the original complaint, both an over-all scheme of monopolization and various specific acts, including the acquisitions here in issue, were alleged and asserted to be unlawful. While the specific acts were said to be part of the over-all attempt to monopolize, the acts were also said to contravene Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. No mention of Section 7 of the Clayton Act appears in the complaint.

During the course of the hearings, both Golden Grain and complaint counsel for the FTC appeared to assume that the sole issue was monopolization. Thus, in the Proposed Findings before the hearing examiner, complaint counsel included several findings relative to monopolization, but none on the question whether Golden Grain's acts were illegal in and of themselves. Similarly, Golden Grain's Proposed Findings tended to exonerate the specific acts alleged within the context of an over-all monopolization charge.

The hearing examiner found that Golden Grain had not monopolized or attempted to monopolize the dry-paste market in the Pacific Northwest. He did, however, find that Golden Grain's acquisition of control of Major Italian Foods had violated the prohibition of Section 7 of the Clayton Act against acquisitions the effect of which "may be substantially to lessen competition, or to tend to create a monopoly," and therefore had violated Section 5 of the Federal Trade Commission Act. The examiner did not make a similar finding with reference to the stock of Oregon Macaroni because Oregon Macaroni was so small that its acquisition made "little change" in the competitive structure of the market. Golden Grain's acquisition of 49% of the stock of Porter-Scarpelli was excused by the hearing examiner as within the "solely for investment" exception to Section 7 of the Clayton Act.

The Commission affirmed its examiner's order as to Major Italian Foods, but as to Porter-Scarpelli and Oregon Macaroni went further and declared both of these acquisitions also to be unlawful. The Commission based its decision on its conclusion that Section 7 of the Clayton Act proscribed all the challenged acquisitions, and it rejected the hearing examiner's reasons for excluding the two acquisitions from the scope of the order.

■ Under the Administrative Procedure Act § 5(b), 5 U.S.C. § 554(b), persons entitled to notice of an administrative hearing must be informed of "the matters of fact and law asserted." However, the purpose of the Act is satisfied, and there is no due-process violation, if the party proceeded against "understood the issue" and "was afforded full opportunity" to justify its conduct. NLRB v. Mackay Radio & Telegraph

Co., 304 U.S. 333, 350, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); L. G. Balfour Co. v. FTC, 442 F.2d 1, 19, 21 (7th Cir. 1971); REA Trucking Co. v. NLRB, 439 F.2d 1065 (9th Cir. 1971); Tashof v. FTC, 141 U.S.App.D.C. 274, 437 F.2d 707 (1970); Swift & Co. v. United States, 393 F.2d 247, 5 A.L.R. Fed. 709 (7th Cir. 1968); J. B. Williams Co. v. FTC, 381 F.2d 884 (6th Cir. 1967). On the other hand, if an issue was not litigated, and the party proceeded against was not given an opportunity to defend himself, an adverse finding on that issue by the agency does violate due process. L. G. Balfour Co. v. FTC, 442 F.2d at 17; Rodale Press, Inc. v. FTC, 132 U.S.App.D.C. 317, 407 F.2d 1252 (1968); NLRB v. Majestic Weaving Co., 355 F.2d 854 (2d Cir. 1966); Northeastern Indiana Building and Construction Trades Council v. NLRB, 122 U.S.App.D.C. 220, 352 F.2d 696 (1965); NLRB v. Johnson, 322 F.2d 216 (6th Cir. 1963), cert. denied, 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964).

■ In the present case the initial complaint, while hardly a model of clarity, put Golden Grain on notice that the specific practices as well as the alleged over-all scheme of monopolization were being challenged. Moreover, an examination of the proceedings subsequent to the compaint demonstrates that while there was some confusion as to the nature of the charge, all facts relevant to the alleged unlawful acts were fully litigated. Actual litigation is often referred to in support of a holding that a party was not prejudiced by initially inadequate pleadings. NLRB v. Mackay Radio & Telegraph Co., *supra*; Bruhn's Freezer Meats v. United States Dept. of Agr., 438 F.2d 1332, 1342 (8th Cir. 1971); REA Trucking Co. v. NLRB, *supra*; Tashof v. FTC, *supra*.

■ Before the examiner, complaint counsel attempted to prove that Golden Grain had monopolized or attempted to monopolize the macaroni business through a series of illegal acts, and Golden Grain attempted to rebut those charges by proving that each act was not illegal and did not have the effect of creating a monopoly. On Appeal before the Commission, the issue was whether Golden Grain's acquisitions substantially lessened competition or tended to create a monopoly. In this context, there is an obvious difference between the Sherman Act and Clayton Act standards. If Golden Grain had been deprived of all opportunity even to argue that it had not violated the more exacting standards of Section 7 of the Clayton Act, we would not hesitate to reverse. *See* Bendix Corp. v. FTC, 450 F.2d 534 (6th Cir. 1971). But the facts at issue under the two standards can be essentially identical, and were identical in this case. Under both standards, the degree of market foreclosure is determined as of the time of suit. United States v. E. I. du Pont de Nemours & Co. (General Motors), 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). Under both standards the principal factual questions concern the relevant product and geographic market affected by the merger or acquisition and the degree of resulting foreclosure of that market. In the present case this identity of factual issues is compelling, because this proceeding was not brought under either the Sherman Act or the Clayton Act as such, but under Section 5 of the Federal Trade Commission Act. Section 5 condemns "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce * * *." A violation of Section 5 may be found where the "basic policies" of the Sherman Act or the Clayton Act are violated; an actual violation of the underlying statutes need not be found. FTC v. Brown Shoe Co., 384 U.S. 316, 321, 86 S.Ct. 1501, 16 L.Ed.2d 587 (1966). Whatever the semantic difference between monopolization and tendency to create a monopoly, it is clear that the "basic policies" of these two prohibitions are the same.

Nor was Golden Grain deprived of an opportunity to present defenses to meet the full array of charges. Golden Grain raised and fully argued the "failing company" defense for its acquisition

of Major Italian Foods, a defense usually thought peculiar to Clayton Act § 7 violations. Although Golden Grain did not expressly argue that its 49% stock interest in Porter-Scarpelli fell within the "investment" exception to Clayton Act § 7, the precise facts that Golden Grain put forth as negating any monopolistic intent in its acquisition and retention of Porter-Scarpelli stock were relied on by the hearing examiner in his findings that the Porter-Scarpelli stock was held as an investment. Golden Grain has argued that its trial strategy was controlled by the pleadings, but we can find no substantive prejudice. The hearings went on for many months, and if an evidentiary stone was left unturned on the central issues it has not been brought to our attention.

It is true that Golden Grain was never given a sufficient opportunity to argue that the companies it acquired were not "in commerce" within the meaning of Clayton Act § 7. As to two of the acquisitions, Major Italian Foods and Porter-Scarpelli, we hold this defect in the proceedings immaterial, for the evidence that these companies were engaged in interstate commerce was overwhelming. We cannot say the same, however, for Oregon Macaroni, the smallest of the competitors acquired. As to Oregon Macaroni, we must deny enforcement of the Commission's order, because the element of commerce was never litigated.

Golden Grain next argues that the FTC had no jurisdiction to bring a Clayton Act § 7 action under Federal Trade Commission Act § 5, and that the FTC lost jurisdiction over the case when it dismissed the Sherman Act monopolization charges. This argument adds nothing to the due-process argument discussed above.

Golden Grain's final contention is that Major Italian Foods was a "failing company" within the meaning of International Shoe Co. v. FTC, 280 U.S. 291, 50 S.Ct. 89, 74 L.Ed. 431 (1930). This may be true, but despite its wide-ranging evidence on the point Golden Grain failed to make a legally sufficient record to establish the failing-company defense. In Citizen Publishing Co. v. United States, 394 U.S. 131, 138, 89 S.Ct. 927, 22 L.Ed.2d 148 (1969), the Supreme Court held that the burden was on the party claiming the failing-company defense to prove that he was the "only available purchaser." This heavy burden has not been met. Golden Grain did prove that other companies looked at, but decided not to buy, Major Italian Foods, but Golden Grain did not prove that the owners of Major Italian had made any affirmative attempt to seek out other purchasers. Merely proving that some or all of the most logical purchasers have declined to buy is not enough to prove that the challenged purchaser was the only prospective purchaser. United States v. Greater Buffalo Press, Inc., 402 U.S. 549, 91 S.Ct. 1692, 29 L.Ed.2d 170 (1971).

The Federal Trade Commission order is enforced except for that part of the order requiring divestiture of Oregon Macaroni, which is denied enforcement.