**DEPARTMENT OF EDUCATION OF THE STATE OF CALIFORNIA, Petitioner,**

v.

**William J. BENNETT, Secretary of Education, United States Department of Education, Respondent.**

No. 87–7458.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1988.

Decided Dec. 27, 1988.

**656**

Taylor S. Carey, Staff Counsel, Cal. Dept. of Educ., Sacramento, Cal., for petitioner.

Ronald B. Petracca, Atty., U.S. Dept. of Educ., Washington, D.C., for respondent.

Before FLETCHER, BOOCHEVER and TROTT, Circuit Judges.

TROTT, Circuit Judge:

The California State Department of Education ("California") petitions for review of a final decision of the United States Secretary of Education ("Secretary"). The Secretary ordered California to refund a total of $1,203,139 to the United States Department of Education ("Department"). The Department had allocated these funds to California under Part B of the Education of the Handicapped Act ("EHA–B"), 20 U.S.C. § 1400, et seq., §§ 1411–1420. The Secretary found that $1,077,870 of fiscal year 1977 and $125,269 of fiscal year 1978 funds were not obligated during the time frame prescribed by statute and must therefore be returned to the Department. We reverse the Secretary's decision.

## I. STATUTORY SCHEME

The EHA–B establishes an entitlement program providing special education and related services to handicapped children. *See* 20 U.S.C. § 1400(c). Congress appropriates funds for this program annually, and the Secretary then allocates them to the states on a per capita basis. *See* 20 U.S.C. § 1411(a). The state's educational agency receives the EHA–B grant on behalf of the state. *See* 20 U.S.C. § 1401(7).

The state educational agency must comply with distribution requirements in allocating and reallocating EHA–B funds to local educational agencies. Each local educational agency in a state is entitled to an amount of EHA–B funds that bears the same ratio to the state's total EHA–B grant as the number of handicapped children served by the given local educational agency bears to the aggregate number of handicapped children in all local educational agencies that apply to the state for EHA–B funds. *See* 20 U.S.C. § 1411(d). State educational agencies must maintain compliance with this intra-state entitlement scheme when they reallocate funds from one local educational agency to another local educational agency. *See* 20 U.S.C. § 1414(e). Reallocation of all or part of a local educational agency's subgrant may only take place either when the state educational agency determines that the local educational agency is able adequately to provide services for handicapped children in its area with state and local funds, *see* 20 U.S.C. § 1414(e), or when Congress has failed to appropriate sufficient funds to pay the state's EHA–B entitlement in full for a given year and some local educational agencies have reported to the state educational agency that they will not expend all funds available to them for that year. *See* 20 U.S.C. § 1411(g).

State educational agencies must also comply with timing requirements in distributing EHA–B funds to local educational agencies. Under the Tydings Amendment, 20 U.S.C. § 1225(b), state educational agencies must complete the process of obligating grant funds such as those administered under EHA–B to local educational agencies by the end of the fiscal year succeeding the fiscal year for which the funds were appropriated. The Department can award EHA–B funds to state educational agencies as early as July, when the state fiscal year begins, because 20 U.S.C. § 1223 allows appropriations for the subsequent fiscal year to be included in the appropriations bill for the previous year. Given that the

federal fiscal year runs from October 1 to September 30, the Tydings Amendment allows state educational agencies twenty-seven months in which to obligate EHA–B funds to local educational agencies.

Two recent decisions interpreting the Tydings Amendment are relevant to this case. First, on May 6, 1986, in what has come to be known as the "Tydings Decision," the Secretary of Education ruled that accounting entries recording the obligation of funds could be made after the close of the twenty-seven month Tydings period so long as there was "clear and unambiguous documentation" showing that the obligation of the funds was itself timely. *See Appeal of State of California,* Docket No. 12(122)83, at 5 (May 6, 1986). Second, on January 2, 1987, the Secretary held that a reallocation of funds from one local educational agency to another that does not fall under either § 1414(e) or § 1411(g) must be made during the Tydings period. *See Appeal of Massachusetts,* Docket No. 37(169)84 (Jan. 2, 1987). The First Circuit recently affirmed this decision. *See Commonwealth of Massachusetts, Dept. of Education v. United States Dept. of Education,* 837 F.2d 536 (1st Cir. 1988).

## II. FACTS AND PROCEEDINGS

This case arises from an audit of California by the Inspector General of the Department for fiscal years 1976 through 1980. As the Education Appeal Board ("Appeal Board") described it, the audit:

did not question the underlying transactions or determine their allowability, allocability or reasonableness. It limited its examination to whether or not the expenditure reports were based on and supported by [California's] financial records. In other words, were [California's financial records] "linked" to the LEA expenditures prior to the end of the Tydings period.

*Appeal of the State of California,* Docket No. 20(130)83, at 3 (June 5, 1987) (hereinafter *"Final Decision "*).

On March 31, 1983, pursuant to that audit, George A. Conn, Acting Assistant Sec-

retary for Special Education & Rehabilitative Services, issued a final letter of audit determination to California as required by 20 U.S.C. § 1234a(a). The final letter of audit determination found California had finalized its financial status reports before receiving all final expenditure reports from local educational agencies. As a result, California's financial status reports failed to show that the state department of education had "disencumbered," or been liberated from obligations amounting to, $53,582 of fiscal year 1977 funds and $125,269 of fiscal year 1978 funds after the relevant period for obligating those funds had expired. Moreover, the final letter of audit determination found California had improperly transferred $1,024,288 which was initially charged to the fiscal year 1978 grant to the fiscal year 1977 grant after the Tydings period for those funds had expired. On the basis of these conclusions, the final letter of audit determination ordered California to refund $1,077,870 of fiscal year 1977 funds and $125,269 of fiscal year 1978 funds: a total of $1,203,139.

On May 3, 1983, California filed an application for review of the final letter of audit determination by the Appeal Board. The parties finalized a stipulation on March 28, 1985 and submitted it to Judge Orman W. Ketcham, Acting Chairman of the Appeal Board. The Stipulation stated that both parties agreed that there appeared to be sufficient expenditures claimed by local educational agencies within the Tydings period and that these expenditures would not be at issue in the appeal.

An evidentiary hearing and oral argument were held before the Appeal Board on September 24 and 25, 1985. On April 15, 1986, the Appeal Board issued its Initial Decision, which concluded that the Tydings Amendment requires both a transaction giving rise to an obligation and a linking of that transaction with the grant funds in question during the Tydings period. *See Appeal of the State of California,* Docket No. 20(130)83, at 6 (hereinafter *"Initial Decision "*). The Appeal Board found that California had complied with the Tydings Amendment as far as the underlying trans-

actions were concerned but had not linked those transactions to specific grant funds within the Tydings period. *Id.* at 7.

On May 6, 1986, the Secretary issued his Tydings Decision, which threw doubt on the validity of the Initial Decision in this case by indicating that accounting entries regarding the obligation of funds could be made after the close of the Tydings period if there were clear proof that the obligation was itself timely. On July 2, 1986, the Secretary remanded this case to the Appeal Board to "make further factual findings about the state's method of accounting in light of the Tydings Decision."

On January 2, 1987, the Secretary issued another decision that would have an impact on consideration of this case. *Appeal of Massachusetts* interpreted the Tydings Amendment to mean that, in a case where 20 U.S.C. §§ 1411(g) and 1414(e) do not apply, a state may not "authorize the reallocation of excess funds between different subgrantees after the time has expired for such subgrantees to obligate such funds." *Appeal of Massachusetts,* Docket No. 37(169)84, at 3. Because the instant case, like the *Massachusetts* case, involved the transfer of funds between local educational agencies after the Tydings period, the Appeal Board issued an order on April 9, 1987 inviting California to submit evidence that its actions with respect to the funds at issue were consistent with the *Appeal of Massachusetts.* California, however, did not submit any evidence to the Appeal Board in response to this request because it believed that the formula distribution issue raised in the *Appeal of Massachusetts* was not presented by the audit of California's program.

The Appeal Board issued its Remand Decision on June 5, 1987. It held that appellant had not met its burden of proving that its post-Tydings period reallocations of funds were made in accordance with the

reallocation statutes, 20 U.S.C. §§ 1411(g) and 1414(e), and that, under *Appeal of Massachusetts,* California must therefore refund $1,203,139 to the Department. The Secretary allowed the Appeal Board Remand Decision to become the final decision of the Department on August 20, 1987. California then filed a timely petition for review of this decision.

## III. DISCUSSION

California contends the Secretary's Final Decision exceeded the jurisdiction of the Appeal Board and violated California's right to due process because the Appeal Board failed to give California adequate notice under 20 U.S.C. § 1234a(b) and 5 U.S.C. § 554(b)(3) that the timeliness of the underlying transactions was at issue.[1] We agree.

Under 20 U.S.C. § 1234(a)(1) and 34 C.F.R. § 78.2(a)(1) and (a)(4), the Appeal Board has jurisdiction to review final audit determinations and conduct audit appeal hearings pursuant to 20 U.S.C. § 1234a. Section 1234a(b) requires the Appeal Board to return to the Secretary any final letter of audit determination that "contains insufficient detail to identify with particularity those expenditures which are not allowable." 20 U.S.C. § 1234a(b). The Appeal Board does not, however, automatically exceed its jurisdiction if it fails to return an insufficiently detailed final letter of audit determination to the Secretary: "While it is well settled that an administrative adjudication extending beyond the issues defined in a notice of hearing is void for lack of jurisdiction, it is also well settled that technical flaws in a notice can be cured if the actual conduct of the administrative proceedings provides notice to the participants of that which is under consideration." *National Steel and Shipbuilding Co. v. Director, Office of*

[1]. California also contends the Secretary's decision is unsupported by substantial evidence and barred by the relevant statute of limitation, 20 U.S.C. § 1234a(g). Because we reverse this case on the basis of inadequate notice, we need not reach these issues. It is worth noting, however, that the CSDE waived the statute of limitation

defense because it did not raise this issue below. *See United States v. DeTar,* 832 F.2d 1110, 1114 (9th Cir.1987) ("The statute of limitations ... provides an affirmative defense, which is waived in this circuit if it is not asserted before or at trial.").

*Workers' Compensation Programs,* 616 F.2d 420, 421 (9th Cir.1980).

■ Adequacy of notice is necessary not only for jurisdictional but also for due process reasons. The Administrative Procedure Act codifies fairness guarantees for the administrative process. *See* 5 U.S.C. § 554(b)(3) ("Persons entitled to notice of an agency hearing shall be timely informed of ... (3) the matters of fact and law asserted."). We have held that notice will be adequate for due process purposes " 'if the party proceeded against "understood the issue" and "was afforded full opportunity" to justify his conduct.' " *Lara v. Secretary of Interior,* 820 F.2d 1535, 1539 (9th Cir.1987) (quoting *Southwest Sunsites, Inc. v. FTC,* 785 F.2d 1431, 1435 (9th Cir.1986) (in turn quoting *Golden Grain Macaroni Co. v. FTC,* 472 F.2d 882, 885 (9th Cir.1972))).

■ For notice to have been adequate in this case, then, California must have been afforded ample opportunity to understand that reallocations among local educational agencies outside of the Tydings period could be the determinative issue. The final letter of audit determination included language suggesting that the audit concerned California's general failure to complete the process of obligating funds within the Tydings period: "The [state educational agency] did not provide evidence to document that the $1,204,288 [sic] of FY 1977 Funds were expended or obligated before October 1, 1978." Because the process of obligating EHA–B funds involves allocating and sometimes reallocating those funds to local educational agencies, this statement could be interpreted to provide notice that reallocation was a potentially pivotal issue.

The Stipulation, however, defeats such an interpretation. As described above, the parties stipulated that the expenditure aspect of the obligating process was not to be at issue because local educational agencies had claimed sufficient expenditures to account for the funds in question during the Tydings period. The Stipulation thus justifiably led California to rely on a narrow interpretation of the issue presented by the final letter of audit determination: the fi-

nal letter of audit determination concerns only the issue of "linkage" of California's financial reports to its transactions. The Appeal Board itself endorsed this narrow interpretation of the audit in both its initial and its remand decisions. *See Initial Decision,* at 7 ("[T]he Board determines that the California State Department of Education did indeed comply with the Tydings Amendment as far as the underlying transactions are concerned. California, however, did not comply with the requirement that positive identification of the underlying transaction be made in the September 30 report or the January 1 report ..."); *Final Decision,* at 3 ("Upon auditing these funds, the auditors did not question the underlying transactions or determine their allowability, allocability or reasonableness.").

The Secretary's final decision thus ranged beyond the issues defined in the notice of hearing. The final decision is therefore void for lack of jurisdiction unless the actual conduct of the administrative proceedings provided adequate notice that reallocations, as opposed to accounting practices, could determine the case. *See National Steel & Shipbuilding Co. v. Director, Office of Workers' Compensation Programs,* 616 F.2d at 421. Because we find that the actual conduct of the administrative proceedings did not undermine the force of the Stipulation, we conclude that the final decision exceeded the jurisdiction of the Appeal Board and, under the test we articulated in *Lara v. Secretary of the Interior,* 820 F.2d at 1539, violated California's right to due process. The only question the Appeal Board had jurisdiction to consider, that of "linkage" after the close of the Tydings period, was settled in favor of California by the Tydings Decision in conjunction with the Stipulation. We therefore reverse the Secretary's Final Decision and hold that California is not obligated to refund to the federal government the $1,203,139 at issue in this audit. We further note that under 20 U.S.C. § 1234a(g)'s five-year limitation on state liability for unauthorized expenditures of grant monies, the Department cannot now

reinitiate proceedings seeking to recoup the $1,203,139 of fiscal year 1977 and fiscal year 1978 funds.

REVERSED.