**STATE OF WYOMING, Petitioner,**

v.

**Lamar ALEXANDER, Secretary of Education, United States Department of Education, Respondent.**

No. 88–1419.

United States Court of Appeals, Tenth Circuit.

July 27, 1992.

Michael L. Brustein of Brustein & Manasevit, P.C., Washington, D.C. (Rowena Heckert, Asst. Atty. Gen., Cheyenne, Wyo., and Paul A. Levine of Brustein & Manasevit, P.C., Washington, D.C., with him on the brief), for petitioner.

Lynette A. Charboneau (Wendell L. Willkie, Gen. Counsel, and Jane A. Hess, with her on the brief), U.S. Dept. of Educ., Washington, D.C., for respondent.

Before ANDERSON and HOLLOWAY, Circuit Judges, and THOMPSON *, Chief District Judge.

HOLLOWAY, Circuit Judge.

The State of Wyoming petitions this court to review the final agency decision of the United States Department of Education ("DOE" or "Agency") ordering the State to refund federal vocational education funds granted pursuant to the Vocational Education Act Amendments of 1976, 20 U.S.C. § 2301, *et seq.* ("VEA"). For the reasons assigned below, we grant in part the petition to review the Sheridan County and Fremont County (# 2) grants, and remand for further proceedings. We deny the petition in all other respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Under the VEA, Wyoming received annual federal grants-in-aid for vocational education from the DOE after submission and approval of a State Plan pursuant to 20

---

* The Honorable Ralph G. Thompson, Chief Judge of the United States District Court for the Western District of Oklahoma, sitting by designation.

U.S.C. §§ 2306 and 2307. The DOE made each annual grant through issuance of a Letter of Credit ("LOC"), which permitted Wyoming to draw federal funds as needed for local school districts. Specifically, Wyoming was allotted $1,110,314 in a federal LOC for fiscal year 1979 (FY79), and $1,062,848 for fiscal year 1980 (FY80). Wyoming actually withdrew $1,049,010 for FY79, and $1,062,848 for FY80.

Under the VEA, participants in the funding program are required to "set aside" funds for certain targeted student groups. As provided in § 2310, entitled "Priority of allotments of State funds for vocational education programs," States are required to set aside funds in the following manner:

**(a) Handicapped persons**

For each fiscal year, at least 10 per centum of each State's allotment under section 2303 of this title shall be used to pay 50 per centum of the cost of vocational education for handicapped persons.

**(b) Disadvantaged and limited English-speaking persons; stipends**

For each fiscal year, at least 20 per centum of each State's allotment under section 2303 of this title shall be used to pay 50 per centum of the cost of vocational education for disadvantaged persons (other than handicapped persons), [and] for persons who have limited English-speaking ability[.]

20 U.S.C. § 2310. Thus, for each fiscal year, Wyoming was required to set aside 10% of its annual allotment for handicapped students and an additional 20% for disadvantaged and non-English proficient students.

As described in the Agency's Notice of Interpretation, VEA programs for handicapped/disadvantaged students are either "mainstream" or "specialized." In a mainstreamed program,

the [targeted] ... student is placed in a regular vocational class with non-handicapped or non-disadvantaged students. Extra support is provided to the [targeted] ... students or to the instructors in the class.... These additional services

may be paid for out of Federal funds and matching State and local funds under [the] ... set aside [provisions].

*Id.*, 43 Fed.Reg. 12752 (Mar. 27, 1978). The VEA requires States to allow targeted students to participate in regular (mainstream) programs to the maximum extent possible, and States may only use VEA funds to pay the "excess cost"—that incurred in providing the supplemental services mentioned above ("excess cost approach"). Students who cannot be mainstreamed because of the nature or severity of their handicap or disadvantage may be placed in a separate specialized program solely for their benefit. Such students must then be provided "specialized staff, special educational materials or equipment, and supportive services" as diagnosed or identified as necessary for each to succeed in a vocational education program. *Id.* These specialized programs "may be funded in full from the Federal and matching State and local funds" using set aside money ("full cost approach"). *Id.; see* 34 C.F.R. 400.312, 400.313 (1980). Additionally, the VEA expressly prohibits using federal funds to supplant or displace state or local funds. *See* § 2306(a)(6).[1] Finally, the State bears the burden of showing the allowability of its expenditures. *See* 20 U.S.C. § 1234a(b)(3); 34 C.F.R. § 78.16.

On December 30, 1984, DOE auditors completed an inspection of Wyoming's administration of VEA funds awarded. The auditors' report concluded that Wyoming had misspent certain vocational education funds, in part, by failing to comply with the set aside requirements. The auditors also cited Wyoming for failing to document how the programs developed by the State served targeted students under either the excess or full cost approaches. After review of this report, the Assistant Secretary for Vocational and Adult Education ruled that Wyoming must refund $201,922 in misspent VEA funds. The Assistant Secretary issued a demand for this sum by final letter of determination ("FLD"), dated May 10, 1985. Although Wyoming conceded the

---

**1.** The VEA, an unusually prescriptive and lengthy statute, was superseded by the Carl D. Perkins Vocational Education Act, Pub.L. No. 98–524 (July 1, 1985).

need to refund $16,363 from Finding No. 2 of the FLD, the State sought administrative review of the remainder of the Assistant Secretary's FLD before the Agency's Education Appeal Board ("EAB").

Following the submission of briefs and documentary evidence by both parties, the EAB issued an initial decision on December 14, 1987. Although the EAB ruled in favor of Wyoming on most of the challenged expenditures, it concluded that the State must still refund $87,859 (in addition to the earlier, conceded $16,363) to the DOE.[2] Both parties subsequently filed comments on this initial decision with the Secretary of Education. After 60 days without action by the Secretary, the EAB's decision became final pursuant to 20 U.S.C. § 1234a(g). Wyoming then filed a timely petition for review in this court.[3]

## II. DISCUSSION

In this petition, Wyoming contests the EAB's decision that $87,859 in VEA funds were misspent and must be refunded. Specifically, Wyoming challenges the following EAB conclusions:

(1) that Wyoming must refund $60,812 because the State failed to adequately comply with the set aside requirements for FY79 and FY80; (2) that a $6,807 grant to Fremont County School District was improperly used to supplant local funds with federal funds; (3) that a $3,199 grant to the Sheridan County School District was misused to expand a drafting program which was not operated for the benefit of the disadvantaged; (4) that the State failed to submit adequate evidence to show that the $3,370

grant to Fremont County School District (Grant # 2) and the $5,838 grant to Crook County School District were spent on programs operated for the benefit of targeted students under either excess or full cost approaches.[4]

After discussing the principles guiding our review, we will discuss each of Wyoming's claims of error in turn.

### A. Standard of Review

 The Supreme Court has outlined a two-step analysis for reviewing an agency's construction of a statute which it administers:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Where Congress has implicitly left a gap for the agency to fill, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by ... an agency." *Id.* at 844, 104 S.Ct. at 2782. Furthermore, as the Court recently explained, "[i]f the agency interpretation is not in conflict with the plain language of

2. The conclusion of the EAB's Initial Decision was as follows:

CONCLUSION

In view of the foregoing findings, this Panel concludes that the State of Wyoming owes no amount for Finding No. 1 as stated in the FLD. It should, however, repay $87,859 to the United States Department of Education for Finding No. 2 and for Finding No. 4 divided as follows:
$712 for Sublett County School District # 1
$3,370 for Fremont County School District $38
(2nd Grant)
$3,199 for Sheridan County School District # 1

$5,838 for Crook County School District
$7,121 for Washakie County School District
$6,807 for Fremont County School District (No. 1)
$60,812 for set-aside funds for FY 1979 and FY 1980

3. We have jurisdiction to review this petition pursuant to 20 U.S.C. § 1234g.

4. Wyoming concedes that the EAB correctly disallowed the remaining $7,833 in grants for the Sublett and Washakie County school districts. *See* Brief of Petitioner at 10 n. 22.

the statute, deference is due." *National Railroad Passenger Corp. v. I.C.C.,* —— U.S. ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992). However, "a reviewing court need not accept an interpretation which is unreasonable." *Id.*

■ More specifically, when reviewing an agency determination that a State has misused education funds, "a court should consider whether the findings are supported by substantial evidence and reflect an application of the proper legal standards." *Bennett v. Kentucky,* 470 U.S. 656, 666, 105 S.Ct. 1544, 1550, 84 L.Ed.2d 590 (1985); *see also* 20 U.S.C. § 1234g(c) (directing that "[t]he findings of fact by the [EAB], if supported by substantial evidence, shall be conclusive"). For the evidence to be "substantial," it must be such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ Thus, our review is narrow and deferential, and "[w]here the Secretary has properly concluded that funds were misused under the legal standards in effect when the grants were made, a reviewing court has no independent authority to excuse repayment based on its view of what would be the most equitable outcome." *Bennett v. New Jersey,* 470 U.S. 632, 646,

105 S.Ct. 1555, 1563, 84 L.Ed.2d 572 (1985). Even so, "we must review the record as a whole, and the 'substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot v. Heckler,* 814 F.2d 1456, 1461 (10th Cir.1987) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)).

**B. The Set Aside Requirements**

■ Wyoming concentrates most of its challenge on the EAB's determination that the State must refund $60,812 for failing to comply with the set aside requirements in FY79 and FY80. Wyoming concedes that it did not spend $35,179 of the grant funds which should have been set aside under § 2310 for those years.[5] Nevertheless, Wyoming argues that the EAB miscalculated the amount of the refund by failing to grant the State a $25,633 "credit." This credit, according to Wyoming, is the proportional share (the set aside percentages) of the funds which Wyoming did not withdraw from the federal LOCs during the two fiscal years at issue.[6]

We read Wyoming's argument to be that it actually misspent only $35,179 in grant funds, not the $60,812 assessed by the EAB.[7] We believe, however, that the EAB

**5.** The figures that Wyoming relies on regarding these two grants breakdown as follows:

| | FY79 | FY80 |
|---|---|---|
| (A) Required minimum setasides (All target groups) | $330,094 | $329,094 |
| (B) Amount withdrawn by State | 314,770 | 318,852 |
| (C) Amount spent on target groups | 289,832 | 308,544 |

Wyoming concedes the need to refund a total of $35,179, comprised of $24,871 for FY79 and $10,308 for FY80—the difference between the amounts withdrawn and the amounts actually spent on the targeted groups [amounts (B)–(C) above]. The partial credit of $25,633 sought allegedly consists of the funds remaining in the LOCs and not withdrawn by the State [amounts (A)–(B) above]. *See* Brief of Petitioner at 12 (extrapolation from Table).

**6.** The Agency acknowledges that at least $61,079 in unexpended VEA funds for FY79 remained in the federal LOC when it lapsed and returned to the federal government by operation of 20 U.S.C. § 1225(b). *See* Brief of Respondent at 19 n. 11.

**7.** Wyoming arrives at its credit argument in two ways. First, Wyoming argued to the EAB that the level of funds which must be set aside should be determined by applying the percentages to the amount of funds actually withdrawn from the LOCs, crediting the State for not withdrawing the entire amount granted. The refund due, then, would be the difference between the set aside percentages of the amount withdrawn and what the state actually spent on the targeted students. The EAB rejected this methodology, observing that the statute clearly requires that set aside amounts be based on the State's "allotment"—the total grant amount approved for the State.

In this petition, Wyoming now argues that even though the EAB properly computed the set aside amounts as a percentage of the entire

acted within the intent of Congress by holding Wyoming liable for its failure to fulfill its promise to expend on the designated programs the full set aside amounts.[8]

The EAB interpretation reasonably and permissibly comports with the apparent intent of Congress, whereas that of Wyoming does not. As the Supreme Court has noted, "[t]he State gave certain assurances as a condition for receiving the federal funds, and if those assurances are not complied with, the Federal Government is entitled to recover amounts spent contrary to the terms of the grant agreement." *Bennett v. Kentucky*, 470 U.S. at 663, 105 S.Ct. at 1549. Under the EAB's interpretation, when a State withdraws any funds from a federal LOC, it commits to spend the set aside requirement amounts *before* using federal funds on other nontargeted areas. Indeed, any other construction would alter the "priority" that Congress intended.[9] Wyoming's interpretation, to the contrary, negates the conditions Congress attached to participation in the VEA program. Under Wyoming's view of the VEA, only those states that withdraw 100% of their authorized allotment would be obligated to spend the full set aside amounts on targeted students. Thus, states could dramatically downsize their initial plans, receive a "credit" for the unused portion, and thereby avoid the initial obligation to spend the full 30% of the allotment. The EAB acted reasonably in rejecting Wyoming's contention that it never withdrew all the funds designated for targeted students. Under *Bennett v. Kentucky*, the state must fulfill the obligation it assumed when it chose to participate.

Admittedly, the rationale supporting the EAB's initial decision is not as well developed as it might have been. Even so, the EAB unquestionably concluded that the face value of the grant, and not the amount withdrawn from the LOC, should be the base figure for computing the set aside

---

grant, the EAB erred in not crediting Wyoming with $25,633—30% of the balance not drawn on the LOCs.

In our view, these two arguments are founded on distinctions without differences. Wyoming clearly did not "misspend" money it never withdrew. Thus, regardless of how Wyoming develops these figures, at bottom it argues that only $35,179 was withdrawn and misspent.

**8.** Prior to 1985, when Wyoming received written notice that the DOE demanded a refund, Congress had not spoken to the question of how the Agency must compute the measure of recovery when federal LOC funds have been returned. In 1988, Congress amended the general provisions controlling the DOE's enforcement authority, mandating that recipients determined to have made unallowable expenditures "shall be required to return funds in an amount that is proportionate to the extent of harm its violation caused to an identifiable Federal interest associated with the program under which the recipient received the award." 20 U.S.C. § 1234b(a)(1) (codified as amended 1988).

Because this amendment is expressly inapplicable to recipients who received notice to return funds before the effective date, *see* Pub.L. No. 100–297, § 3501(b) (1988), we neither apply nor attempt to construe this amendment. Unable to locate any other provision which arguably covers the facts of the instant case, we will focus on whether the EAB's decisions on this matter are supported by the record and reasonable. *See Chevron*, 467 U.S. at 842–44, 104 S.Ct. at 2781–83.

**9.** The EAB did not rely on outside authority to justify its reading of the VEA, and to date, we find no court interpretation of this statute. We note, however, that the legislative history, although sparse, supports the EAB's decision to assess a priority to targeted student spending.

Section 110 of the 1976 amendments, codified as § 2310, which established the minimum set aside requirements, was entitled "National *Priority* Programs." Pub.L. No. 94–482 (emphasis added). Thus, some priority to the set aside targets was intended.

More importantly, the legislative history shows that Congress wanted the States to give greater priority to spending for targeted students. As explained by the Senate Committee on Labor and Public Welfare:

These particular set-asides were established to provide *a base amount each State must use for programs for students with special needs,* and to provide an incentive for States to target more of their funds on these special needs categories. This was done basically because it was found that [under the former programs only] ... about 2 percent[ ] of the Federal funds were spent on these special needs programs.

. . . . .

[G]iven the limited amount of federal assistance available, *it is the Committee's intent that scarce dollars will be first devoted to those with greatest needs.*

S.Rep. No. 94–882, 94th Cong., 2d Sess. 54, 57 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4713, 4766, 4769.

requirements. Wyoming now concedes this basic point. This EAB conclusion, however, is necessarily founded on the aforementioned interpretation of the VEA which mandates that participating States actually expend on targeted students the set aside percentages of the authorized total grants.

Wyoming also argues that requiring it to refund $60,812 forces it to return the misspent funds twice—once when it allowed the money remaining in the LOCs to lapse back to the federal government, and again when it pays the refund due. This argument, facially appealing, is untenable. First, as mentioned, Wyoming cannot have misspent funds that it never withdrew. More importantly, logic and fairness dictate that participating states can only be held liable up to the amount withdrawn, but not spent, on the targeted groups. The statute does not permit the federal government to profit (i.e., force a refund of more money than the State withdrew) from a State's failure to expend funds on targeted students. But because Wyoming did withdraw sufficient funds to satisfy the set aside requirements, and yet declined to do so, it misspent some of the funds withdrawn. Thus, we accept the EAB's interpretation which requires the State to repay the difference as a "permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

Wyoming also argues that the EAB's decision lacks substantial evidentiary support because the Agency disregarded its former practice of excusing states from the repayment of misspent money when unused federal funds were sufficient to cover the required refund. Wyoming submitted evidence of this alleged former agency practice through the affidavit of Dr. Charles Buzzell, a former Assistant Commissioner in the DOE. Wyoming argues that since this evidence was never rebutted by the Agency and the EAB failed to discuss it, the refund decision necessarily lacks substantial evidentiary support. Wyoming also contends that the Agency's failure to follow its own practice, without explanation, is arbitrary and capricious.

In his affidavit, Buzzell states in relevant part that:

> During my tenure at the [DOE], *the national policy* as set by the [DOE] controlling a State's failure to spend the full amount of the set aside for handicapped and disadvantaged programs *was to require the State to return to the Federal government the unused portion of the set aside.* This unused portion could not be used for any other activity under the VEA. No further sanction was ever used and no further funds were required to be refunded.
>
> *It was never the policy of our office to demand a refund based upon unused set aside funds that had already been returned to the Federal government.* Once the unused set aside funds were returned, the [DOE] considered the matter to be resolved.

III R.Doc. 24, App. C at ¶¶ 5, 6 (emphasis added).

■ We do not believe, however, that the EAB's failure to expressly mention this affidavit, alone, permits us to vacate its decision. *See Tangipahoa Parish School Bd. v. United States Dept. of Educ.*, 821 F.2d 1022, 1030 (5th Cir.1987) (mere allegation that "the EAB did not properly consider [the petitioner's] evidence" was inadequate to grant review). As with any decisional entity, the EAB need not comment on every piece of evidence presented to it, particularly where the evidence provides cumulative support for the conclusion reached. Moreover, as the Agency notes, the EAB expressly admitted the affidavit into the record, over objection, "which strongly indicates the Panel did so for the purpose of considering it, as the Panel indicated it did." Respondent's Brief at 25; *See* Initial Decision, III R.Doc. 28 at 3 ("Initial Dec.").

Wyoming's interpretation of Buzzell's affidavit shows its failure to appreciate why Congress imposed set aside requirements. As the EAB interprets the VEA, Congress' establishment of priority set aside requirements requires participating states to commit to spend each dollar withdrawn from the federal LOC on targeted students until

the minimum required percentage of the total grant has been expended. Once this restriction is satisfied, however, States are free to spend subsequently withdrawn funds on other approved programs. By contrast, Wyoming's argument assumes that only 30% of each dollar withdrawn under the approved grant is part of the set aside.

We fail to see how Wyoming's interpretation gives targeted students "priority." The EAB has made a reasonable interpretation of the VEA, to which we must defer, which accords these students priority in expending withdrawn funds. Buzzell's affidavit does not conflict with this interpretation, as it states that agency policy only requires Wyoming "to return to the Federal government the unused portion of the set aside" that it withdrew from the LOCs.[10] And it follows from this compliance with that policy that there has been no unexplained departure from a previous agency practice. The Agency followed the same practice here that Buzzell describes.

Accordingly, we decline to set aside the EAB's decision that Wyoming must refund $60,812. The EAB's conclusion rests on "permissible construction of the statute" to which we defer, *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2782, and the decision "reflect[s] an application of the proper legal standards." *Bennett v. Kentucky*, 470 U.S. at 666, 105 S.Ct. at 1550.

### C. Supplanting With Federal Funds

Wyoming next challenges the EAB's conclusion that a $6,807 grant to Fremont County School District was improperly used to supplant local funds with federal funds.

The record shows that the district submitted a program budget proposing to spend $18,960, funded equally by local and federal funds, on a project for disadvantaged students. *See* I R.Doc. 15, Att. I–2 at 8. However, as noted in the initial deci-

sion, by the completion of a downsized version of the project, "no [federal] funds were drawn down ... because no one in the district knew that they were available. Consequently, state money was spent." Initial Dec. at 6. The EAB determined that sometime later "the federal funds were discovered, and the costs were charged to this federal source." *Id.* Although the Agency had argued that the funds should be returned because they lapsed before they were withdrawn, the EAB rejected this claim because "[a]n award had in fact been made to which costs could have been charged had the accountants known about the grant[.]" *Id.* Instead, the EAB ordered Wyoming to refund $6,807 because the State had violated § 2306(a)(6) by putting "federal funds where state funds had been used in order to decrease the local effort." *Id.* at 7.

Wyoming argues that the EAB's conclusion that district officials were unaware of the federal funds when they implemented the project is not supported by the facts in the record. Wyoming points to evidence in the record showing that the district formally submitted an application for the federal funds, and that the State approved the award from its allotment. Wyoming insists that this evidence proves that the officials knew federal funds were available and expected to use them. Wyoming also points to evidence indicating that a delay in drawing the federal funds was attributable to "turmoil" engendered during a change in local administration. Thus Wyoming says that the district's decision to use its own funds first and then to seek reimbursement of the federal share was not "supplanting."

■ Although the State's arguments have some force, we hold that there is substantial evidence in the record to support the EAB's finding that Fremont County officials did not draw the federal funds because they were unaware that the funds were available. Both Wyoming and the

---

**10.** Additionally, if Wyoming had not withdrawn over 30% of its total grant, it could claim a credit "based upon the unused set aside funds that had already been returned to the Federal government[,]" as Buzzell indicated in the text quoted above. Wyoming, however, withdrew well over 30% of its total grant for FY79 and FY80. *See* I R.Doc. 15 at 21–22. Therefore, the credit mentioned in Buzzell's statement does not apply here.

Agency rely on a letter in the record from the district's Vocational Director. In this letter, Director Cummings states that "[t]he grant was evidently lost in the paper shuffle. I was informed that it was not funded because of a change in funding by federal law[.]" II R.Doc. 22, Ex. 16 A–6. Certainly, portions of this letter and other record evidence supports Wyoming's contention that at one time, Fremont County officials believed that federal funds would be available.

Nevertheless, Cummings' admits that official knowledge of the grant was "lost in the paper shuffle" during a change in the administration, and that he believed no federal funds were available. This evidence supports the EAB's conclusion that district officials proceeded with the project, believing it "was not funded because of a change in funding by federal law[.]" *Id.* Wyoming points to nothing in the record that affirmatively shows a conscious decision by school district officials to proceed using only local funds first. Again, we note that our review is narrow and that substantial evidence sufficient to make the EAB factual finding conclusive need only be such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. The evidence here satisfies this standard.

Because federal funds were not drawn until after the project was complete, and at least one high ranking Fremont County School District official did not believe that federal funds were available, we accept the EAB's finding that school district officials proceeded with the project without knowledge of available federal funds. In doing so, these officials must have intended to fully pay for the project with local or other funds. Thus, when federal money was later used to partially reimburse the district, these federal funds supplanted, rather than supplemented, the local funds already expended in violation of § 2306(a)(6). *See, e.g., Bennett v. Kentucky*, 470 U.S. at 670–71, 105 S.Ct. at 1553 (use of federal funds where local funds were intended constitutes supplanting). Thus, the EAB's decision is supported by substantial evidence

and reflects an application of the proper legal standard. *See id.* at 666, 105 S.Ct. at 1550. The challenged ruling on this issue cannot be disturbed.

### D. Failure to Benefit Targeted Students: Sheridan Grant

Wyoming next challenges the EAB's ruling that it must refund $3,199 granted to the Sheridan County School District. The DOE auditors recommended disallowance because the Sheridan County program "neither addressed the special needs of the disadvantaged nor represented excess costs." In the FLD, however, the Assistant Secretary sustained the recommendation because "set-aside funds were not used to provide additional services beyond those made available to regular students" under an excess cost approach. FLD, I R.Doc. 2 at 7, 10.

On review, the EAB noted that the district had applied to operate a separate specialized drafting course for disadvantaged students. Yet after reviewing the program, the EAB concluded that the funds were used, instead, to expand the regular drafting program, apparently mainstreaming disadvantaged students into regular drafting courses. The EAB cited evidence showing that disadvantaged students used the facilities 16% of the time. Finally, noting that Wyoming conceded that nontargeted students also used the equipment purchased with the grant funds, the EAB held that "Wyoming has failed to prove a separate, specialized program for the benefits of ... [disadvantaged] students."

Wyoming argues this ruling is contradictory: "[t]he agency cannot have it both ways. The agency cannot first disallow the funds [in the FLD] due to an excess cost violation, and then sustain the disallowance [in the initial decision] after a finding that the excess cost provision was not violated." Brief of Petitioner at 33. Accordingly, the State asks us to remand to allow the Agency to evaluate the evidence using "the excess cost rule or the full cost rule, but not both simultaneously." *Id.* at 35 (emphasis removed).

■ We agree that a remand is necessary for a clarification of the EAB's reason for this disallowance. The Assistant Secretary initially disallowed expenditures because Wyoming allegedly did not comply with the excess cost approach by "provid[ing] additional services beyond those made available to regular students[.]" On review, the EAB concluded that the drafting program was not the specialized program that the school district had originally planned. Nevertheless, the EAB decision leaves open the possibility that the Assistant Secretary erred in finding that the State had not properly operated a mainstream program using the excess cost approach. We must disagree with the Agency's claim that "[t]here is no indication in the record that the EAB viewed the expenditures under the excess cost standard[.]" Brief of Respondent at 38 n. 25. The EAB expressly declared that program "costs were treated as excess costs beyond that needed for the regular program." Initial Dec. at 9.

After closely scrutinizing the EAB decision, we believe the EAB does not adequately address the Assistant Secretary's excess cost ruling in the FLD.[11] This omission provides "good cause" to remand this claim to permit the EAB to take further evidence, if needed, and to make "new or modified findings of fact" regarding the school district's compliance with an excess cost approach or other relevant regulations. *See* 20 U.S.C. § 1234g(c); *American Petroleum Inst. v. EPA*, 540 F.2d 1023, 1029 (10th Cir.1976) (grounds for decision "must be clearly disclosed in . . . the record"), *cert. denied sub nom, Exxon Corp. v. EPA*, 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601 (1977). Accordingly, we vacate the portion of the agency's final decision relating to the Sheridan County School District grant and remand for further proceedings consistent with this opinion.

**E. Failure to Benefit Targeted Students: Fremont/Crook Grants**

■ In its final claim of error, the State argues that the EAB erred in holding that Wyoming failed to submit adequate evidence to show that the $3,370 grant to Fremont County School District # 58 and the $5,838 grant to Crook County School District were spent on programs operated for the benefit of the targeted students under either excess or full cost approaches. Wyoming argues that in both instances, the EAB "disallowed the grants for reasons unrelated to the determinations made by the Assistant Secretary." Brief of Petitioner at 35–36. Consequently Wyoming contends that the EAB "violated the fair hearing requirements embodied in the [VEA] and regulations governing audit appeals" in the DOE, as well as the "statutory fairness guarantees embodied in the Administrative Procedure Act." Brief of Petitioner at 35–36.

### 1. *Fremont County School District (Grant # 2)*

The State contends that the Assistant Secretary disallowed the $3,370 grant to the district alleging that disadvantaged, and not handicapped students, were served. As a result the State claims it was only on notice to present evidence and legal argument on this issue. Wyoming insists that the EAB unfairly "blindsided" it by subsequently disallowing the expenditure on an unrelated ground—that the program was not shown to be operated under either the excess or full cost approaches. Hence the State claims it has been unfairly denied an opportunity to present evidence going to this ground, in violation of the VEA and the APA.

In response, the Agency essentially contends that by putting the type of students served at issue, the Assistant Secretary also put the State on notice that any aspect of its compliance with the VEA was at issue. Alternatively, the Agency insists

---

**11.** Conceivably, the EAB's approval of the disallowance may reflect a finding that Sheridan County used funds approved for a specialized program to operate an unapproved mainstream program. However, from the face of the EAB decision, we cannot draw this inference with any confidence.

that Wyoming itself raised the cost approach issue by "stat[ing] that its evidence showed that the grant was used for salary payments to an aide in a vocational agricultural course" in its initial brief to the EAB. Brief of Respondent at 40–41.

The FLD specifically states that the request for recovery of the $3,370 was sustained because "participating students were disadvantaged, not handicapped." *See* FLD, I R.Doc. 2 at 6, 10. In Wyoming's brief to the EAB the State argued that this determination was factually incorrect, and by attachment, the State presented documentary evidence identifying each student's handicap and showing the source of this information. *See* I R.Doc. 15 at 30. In response, the Agency pressed the same argument to the EAB—that "the project served disadvantaged, and not handicapped students." II R.Doc. 22 at 56.

Addressing these arguments, the EAB concluded that "Wyoming has proven to this Panel's satisfaction that the subject program was for handicapped students and that the students enrolled were in fact handicapped." Ironically, however, the EAB, *sua sponte*, inserted the issue of "whether or not the program was operated for the benefit of those handicapped students under either the excess standard [sic] or full cost standard." Initial Dec. at 7. Noting that Wyoming's brief had mentioned that the funds were used for salary payments to an aide in a vocational agriculture course, the EAB concluded that Wyoming could not "under any standard" show that the proper cost approach had been used because "no persuasive underlying documents to substantiate this expenditure [have] been placed in evidence."

On review of the FLD, the briefs submitted to the EAB, and the EAB decision, we agree that Wyoming was not afforded a meaningful opportunity to present evidence and argument relating to the cost approach used in this grant. Nor do we believe that Wyoming's passing reference to how the

grant money was spent was sufficient to raise the issue of the cost approach used. Prior to the EAB's decision, every one of the Agency's challenges to this grant focused exclusively on the *type* of students served, and not on how the program was expensed.[12] The FLD and the briefs submitted to the EAB are simply devoid of allegations or evidence regarding the cost approach used.

We cannot agree with the Agency that by challenging the type of students served by the program, the State was thereby put on notice that it must also present evidence on the cost approach used in that program. We have stated the test in these terms: "[a]s long as a party to an administrative proceeding is *reasonably apprised of the issues in controversy*, and is not misled, the notice is sufficient." *Savina Home Indus., Inc. v. Secretary of Labor*, 594 F.2d 1358, 1365 (10th Cir.1979) (emphasis added).

We are unconvinced on this record that Wyoming was ever "reasonably apprised" that the Secretary intended to challenge the cost approach used for this grant before the EAB ruled on this issue. Rather, it was *unreasonable* for the EAB to fault the State for not responding to an issue that neither the auditors, the Assistant Secretary, nor the Agency, ever raised. *See also Golden Grain Macaroni Co. v. FTC*, 472 F.2d 882, 886 (9th Cir.1972) (noting that "if an issue was not litigated, and the party proceeded against was not given an opportunity to defend himself, an adverse finding on that issue by the agency ... violate[s] due process"), *cert. denied*, 412 U.S. 918, 93 S.Ct. 2730, 37 L.Ed.2d 144 (1973).

Under 20 U.S.C. § 1234e(a)(2), the Secretary may issue a complaint to recipients of federal education aid which "contains a notice of a hearing" to be held before the DOE. The APA specifically provides that those "entitled to notice of an agency hearing shall be timely informed of ... the

---

**12.** Indeed, the Agency mischaracterizes the sole statement in Wyoming's initial brief which speaks of how the money was spent. The State brief merely says that: "The grant (# II–140–81) for $3,370 was used for salary payments to an

aide in a vocational argiculture [sic] course." I R.Doc. 15 at 30. Contrary to the Agency's depiction, this statement is descriptive, not argumentative. Thus, it simply did not put in issue the cost approach that the State used.

matters of fact and law asserted." 5 U.S.C. § 554(b)(3). By deciding the validity of the disallowance of the grant on the basis of a factor never previously put in issue, the EAB violated the guarantee of adequate notice on "the matters of fact and law asserted" to which the State needed to respond.

Accordingly we vacate the ruling concerning the $3,370 grant to Fremont County School District and remand in order that Wyoming be afforded an opportunity to present evidence on the questions now raised about its cost approach for this grant. *See Golden Grain Macaroni,* 472 F.2d at 886–87 (denying enforcement of FTC order where element at issue was never litigated).

### 2. *Crook County School District*

■■■ We reach a different conclusion respecting the grant to the Crook County School District, however. There, the Assistant Secretary disallowed a grant of $5,838 because:

> Although the two computers purchased with disadvantaged set-aside funds may have been used primarily by disadvantaged students, the fact remains that there were also two [other] computers purchased with regular vocational education funds and used for the same purpose. Because disadvantaged set-aside funds were not used to provide additional services beyond those made available to regular students, we conclude that the excess cost requirement was not met.

I R.Doc. 2 at 10.

In its appeal to the EAB, the State initially assumed that the Assistant Secretary disallowed the grant because Wyoming had failed to show the "excess costs" incurred in mainstreaming these students. Thus, Wyoming submitted evidence to prove that the Assistant Secretary erred because the

program was operated as a specialized project, entitled to a "full cost" rather than an excess cost approach. *See* I R.Doc. 15 at 30–34. The EAB agreed that the program "was intended to be a 'full cost' program," and that the students "were placed in separate, specialized programs[.]" Initial Dec. at 8. Despite this, the EAB noted that the computers purchased with set-aside funds "were in the same classroom as regular students" and inferred that "the disadvantaged were given no special treatment as a result of the grant." Initial Dec. at 9.[13]

As before, Wyoming argues that it did not present evidence about the special treatment afforded the students because "this issue was unrelated to the Assistant Secretary's reason for disallowance." Brief of Petitioner at 38. However, we believe that Wyoming was adequately and reasonably apprised of the need to present evidence on the type of cost approach used for this grant before the EAB ruled.

We acknowledge that the State interpreted the Assistant Secretary's ruling to hold that the State failed to show properly incurred "excess costs" for mainstreaming disadvantaged students. The State's initial brief to the EAB argues that the Assistant Secretary erred by not recognizing that this was a specialized program where the "excess cost" approach would be irrelevant.[14] Nevertheless, any confusion about the Agency's position on this grant was clarified in the Agency's answering brief. There the Agency said that Wyoming improperly used the funds because "neither the excess *nor the full cost standard was met.*" I R.Doc. 22 at 43 (emphasis added). Significantly, the Agency also argued that even if a specialized program were being operated:

> Wyoming has provided no legal or factual basis to support its conclusion that the

---

**13.** We note that the EAB incorrectly refers to "drafting tables" instead of computers in discussing this grant. *See id.* at 9. This mistake had no bearing on the EAB's ultimate decision.

**14.** As the Agency's brief shows, there is some confusion between the terms "excess cost approach" and "excess costs requirement." *See*

Brief of Respondent at 38. The latter generically refers to the requirement to charge costs to the federal LOC in a manner consistent with the limitations of the VEA. Thus, the excess cost requirement is satisfied if the States use either the excess cost approach or the full cost approach, as these terms were defined above.

full cost standard was properly applied to this project. Wyoming has failed to prove that the disadvantaged students could not be mainstreamed ... or that special benefits or services were received by the disadvantaged students in this segregated course.

*Id.* at 43–46. Wyoming was permitted an opportunity to respond to these arguments in its reply brief, but instead of addressing the full cost approach, the State merely relied on previously presented evidence, stating: "Wyoming has documented the special benefits or services each student in the segregated course received." I R.Doc. 24 at 32.

We conclude that the Agency's answer brief adequately put the State on notice of the issues argued to support the disallowance. Thus, unlike the situation surrounding the Fremont Grant # 2, Wyoming cannot claim to have been "blindsided" by the EAB's decision on the Crook County grant. By arguing that the program was properly classed as a full cost project in its initial brief, the State opened the door to the Agency's answering challenge to prove this assertion. Faced directly with this challenge to the program, the State chose to rest on its earlier presentation of evidence. Under these circumstances, the State unquestionably had notice of the issues involved and an opportunity to respond. Thus, we cannot agree that the EAB decided the propriety of the disallowance on an "unrelated ground" as Wyoming argues.

■ Moreover, because Wyoming presents no other argument to challenge the EAB's finding that the State failed to show that the specialized program was operated for the benefit of the disadvantaged, we must defer to the EAB's findings if supported by substantial evidence. The EAB noted that Wyoming failed to present teacher time distribution or other records as evidence that the disadvantaged students served were accorded special treatment. The EAB also noted that the computers purchased with set aside funds were kept in the same classroom as other computers bought for regular students. Wyoming has not disputed these observations.

This evidence is sufficiently substantial to support the EAB's factual determination that no special treatment was given to disadvantaged students.

These facts demonstrate that the program was not operated exclusively to benefit the disadvantaged, and that these students were accorded no specialized treatment by the use of this grant. Thus, Wyoming misspent $5,838 in federal funds which were intended to be used to pay for this specialized program. The State's challenge to the ruling on this grant must be denied.

### III. CONCLUSION

In sum, we VACATE the final agency decision with respect to the vocational grants awarded to Sheridan County School District ($3,199) and the Fremont County School District Grant # 2 ($3,370). We REMAND these two matters to the Department of Education for further proceedings in accordance with this opinion. We DENY the petition to review the final agency decision in all other respects.